FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT WORTH DIVISION

2005 MAY -5 PM 3: 51

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

---

IN RE: §     **4 05 - MC - 018 · A**
Request from Poland §     No.
Pursuant to the Treaty Between §
the United States of America and §     **UNDER SEAL**
Poland on Mutual Legal §
Assistance in the Criminal §
Matter of Marek Pawlowski §

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

This memorandum is submitted in support of the application of the United States

for an order requiring persons within the jurisdiction of this Court to provide testimony

and evidence requested by the District Prosecutor's Office of Gdansk-Poludnie in Poland,

for use in a criminal proceeding in Poland and appointing a commissioner to collect it.

The application is based upon the attached letter of request.

As set forth in the letter of request, the District Prosecutor's Office of Gdansk-

Poludnie in Poland has commenced a criminal investigation, involving misuse of

management responsibilities that caused material financial damage to an entity to which

the duty was owed. Mr. Marek Pawlowski, while President of the Polish corporation

Gedania, is accused of channeling business contracts to his own company, Eksport 707, to

the detriment of Gedania, which is involved in the manufacture of Christmas decorations.

The Polish authorities have requested that we locate and interview representatives from

Bombay Company, 550 Bailey Avenue, Fort Worth, Texas 76107-2111.

This Court, pursuant to its statutory and inherent authority, may (1) order that

persons within this district shall provide the evidence requested for use in a proceeding in

a foreign country, (2) appoint a person to gather such evidence, and (3) establish the

procedure pursuant to which the evidence requested shall be produced.

    1. <u>Authority to grant a foreign request for assistance</u>

    Title 28, Section 1782, provides in pertinent part that:

    The district court of the district in which a person resides or is found may order
him to give his testimony or statement or to produce a document or other thing for use in
a proceeding in a foreign . . . tribunal. The order may be made pursuant to a letter
rogatory issued, or request made, by a foreign . . . tribunal or upon the application of
any interested person . . . .

Section 1782 was enacted:

> . . . to improve United States judicial procedures for . . .
> obtaining evidence in the United States in connection with
> proceedings before foreign and international tribunals . . . .

Sen. Rep. No. 1580, 88th Cong., 2d Sess. 1 (1964), <u>reprinted in</u> 1964 U.S. Code Cong. &

Admin. News 3782 [hereinafter <u>1964 U.S.C.C.A.N.</u>]. By enacting Section 1782,

Congress reaffirmed the inherent authority of district courts to grant foreign judicial

assistance. <u>In re Request for Assistance from Ministry of Legal Affairs of Trinidad and</u>

<u>Tobago</u>, 648 F. Supp. 464 (S.D.Fla. 1986), <u>aff'd</u>, 848 F.2d 1151, 1154 (11th Cir. 1988),

<u>cert</u>. <u>denied</u>, 488 U.S. 1005 (1989) [hereinafter <u>Trinidad and Tobago</u>]. More

significantly, its enactment reflected Congress' desire to **increase** the power of district

courts to respond to foreign requests for judicial assistance. <u>In re Letters Rogatory from</u>

<u>the Tokyo District, Tokyo, Japan</u>, 539 F.2d 1216, 1218 (9th Cir. 1976) [hereinafter <u>Japan</u>

<u>I</u>]. In sum, Section 1782 is a Congressional invitation to district courts to affirmatively

act to execute foreign requests for judicial assistance.

    a.    <u>Source of the foreign request for assistance</u>

    Foreign requests for judicial assistance may be made by a foreign court or tribunal,

including an investigating magistrate or juge d'instruction. <u>In re Letter of Request from</u>

the Government of France, 139 F.R.D. 588, 590-591 (S.D.N.Y. 1991) [hereinafter France]; In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 405-406 (S.D.Fla. 1987) [hereinafter Haiti]. Foreign requests may also be made by "any interested person," such as a foreign legal affairs minister or public prosecutor. In re: Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016 (9th Cir. 1994) [hereinafter Japan II]; In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 690 (D.C. Cir. 1989) [hereinafter United Kingdom]; Trinidad and Tobago, 648 F.Supp. at 466-67.

      b.     Purpose for the foreign request for assistance

Foreign requests for judicial assistance must be for the purpose of securing evidence "for use in a proceeding in a foreign . . . tribunal." This includes evidence needed in proceedings before investigating magistrates as well as in proceedings before conventional courts. 1964 U.S.C.C.A.N. at 3788; Haiti, 669 F. Supp at 405-406. Section 1782 contemplates that district courts will facilitate evidence gathering prior to litigation; Congress amended Section 1782 to eliminate the need for a "pending" proceeding with the intention of expanding the availability of U.S. judicial procedures for obtaining evidence in the United States in connection with proceedings before foreign tribunals. Even so, where no proceeding before a foreign tribunal is currently pending, district courts should consider whether a proceeding can reasonably be expected to commence. As Judge (now Justice) Ginsburg explained:

> [T]o guard against abuse of section 1782, the district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.

United Kingdom, 870 F.2d at 692.[1]

### 2. Authority to appoint a commissioner

Section 1782 further provides in pertinent part that:

> The district court . . . may direct that the testimony or
> statement [of a person who resides or is found within the
> district] be given or the document or other thing be produced,
> before a person appointed by the court.

A district court customarily appoints or "commissions" a person ("commissioner")

to collect evidence on behalf of the district court and authorizes the commissioner to

submit the evidence collected to the requesting foreign court or authority.  With requests

for assistance in criminal matters, a district court typically appoints an Assistant United

States Attorney as commissioner.  However, a district court also may commission a

foreign authority together with (or in lieu of) an Assistant United States Attorney.  See,

e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29

(S.D.N.Y. 1991) [hereinafter Hong Kong].

Application to a district court for appointment of a commissioner to execute a

foreign request for judicial assistance is handled ex parte.  United Kingdom, 870 F.2d at

688; Japan I, 539 F.2d at 1219.

---

[1]  The several circuit courts that have focused on the proximity to a proceeding before a foreign
tribunal that should exist before a district court provides assistance under Section 1782 have produced no
single standard.  In re Request for International Judicial Assistance (Letter Rogatory) for the Federative
Republic of Brazil, 936 F.2d 702, 707 (2d Cir. 1991) [hereinafter Brazil] (proceeding must be
"imminent"); United Kingdom, 870 F.2d at 690 (proceeding must be "reasonably contemplated");
Trinidad and Tobago, 848 F.2d at 1154-56 (proceeding must be "very likely to occur").  See also Japan I,
539 F.2d at 1218 (assistance requested "for use in completion of the investigation and in future trials").
    The Department of Justice disagrees with the Second Circuit position that the proceeding in the
foreign jurisdiction must be "imminent" before a district court may grant judicial assistance.
Nonetheless, such is the law in that circuit and Assistants filing for commissioner appointments within
that circuit must so apprise district courts.  Whether, in support of commissioner appointments, the
Second Circuit's standard should be brought to the attention of district courts in other circuits (and, if so,
whether it should be otherwise distinguished) is left to the discretion of the Assistants and the rules
governing their circuits and districts.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER                    Page 4

### 3. Authority to establish the evidence-collecting procedure

Section 1782 further provides in pertinent part that:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A district court empowers a commissioner to collect the evidence using the procedure prescribed by the court. A district court has "complete discretion in prescribing the procedure to be followed." 1964 U.S.C.C.A.N. at 3789. When a district court's order fails to specify a procedure by which a commissioner is to collect the evidence, the Federal Rules of Civil Procedure apply. Japan II, 16 F.3d 1016; Hong Kong, 138 F.R.D. at 32. However, as Section 1782 makes clear, when a district court does specify a procedure other than one in accordance with the Federal Rules of Civil Procedure, the alternative procedure shall apply. France, 139 F.R.D. at 590-591.

#### a. Commissioner's subpoena

If a district court so orders, a commissioner may use the attached form, entitled commissioner's subpoena, to obtain the requested evidence. See, e.g., United States v. Erato, 2 F.3d 11, 12-13 (2d Cir. 1993) (incorporating in pertinent part the district court's order directing the use of commissioner's subpoenas). The commissioner's subpoena is a creation of neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure, but is an order of the district court for the production of evidence in accordance with Section 1782. See 28 U.S.C. 1651. Upon authorization by a district court, a commissioner may issue such commissioner's subpoenas as are necessary to execute the request in the relevant district.

#### b. Notice of evidence taking

If a district court so orders, a commissioner may collect the evidence in accordance

with procedures--including those involving notice--requested by the requesting court or authority.[2] In the absence of a request for a specific procedure, a district court can assume that the requesting court or authority has provided such notice as the foreign law requires, or that the foreign law does not require notice and the requesting court or authority does not consider notice to be necessary or useful. In sum, if the requesting state has not requested notice, no notice need be provided. Accordingly, to the extent that a request does not ask for specific notice procedures, a district court should authorize a commissioner to take the evidence without notice to any party other than the recipient of the commissioner's subpoena.

4.     The Present Request

Based upon the facts set forth in the letter of request from the District Prosecutor's Office of Gdansk-Poludnie in Poland, the request is clearly one contemplated by Congress when, in enacting Section 1782, it expanded the authority of federal courts to assist foreign tribunals.

Congress intended that the United States set an example to other nations by making judicial assistance generously available. Trinidad and Tobago, 848 F.2d at 1153-54. Accordingly, the government asks this Court, in the interests of comity, to issue the

---

[2] Historically, United States authorities have executed requests for judicial assistance in criminal matters without notification to actual or potential targets of investigations, or even to parties in proceedings, in order to protect against compromising foreign investigations and proceedings. Moreover, United States authorities customarily rely on the requesting courts and authorities to provide such notice directly to the relevant parties as foreign law requires. Finally, requesting courts and authorities routinely request that United States executing authorities follow particular, stated notice procedures when such procedures are necessary or useful under the foreign law or practice. For example, foreign requests frequently ask (1) that a person to be interviewed (generally a defendant or suspect) be given notice of applicable testimonial privileges (e.g., against self-incrimination) at the time of the interview and (2) that a defendant and defense counsel be permitted to be present during the taking of testimony of a witness and be given sufficient notice to make arrangements.

The AUSA should consider including the above or similar text in the body of the memorandum of law where the AUSA believes an explanation of the rationale for limiting notice would be useful to persuade the district court to sign the order. Otherwise, it need not be included.

attached order under Section 1782 granting assistance for a proceeding in Poland,

appointing Assistant United States Attorney David L. Jarvis as commissioner, and

authorizing him to take the actions necessary, including the issuance of commissioner's

subpoenas, to collect the evidence requested and to adopt such procedures in the receipt

of the evidence as are consistent with the intended use thereof in Poland.

Respectfully submitted,

RICHARD B. ROPER
UNITED STATES ATTORNEY

By: _____

DAVID L. JARVIS
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
State Bar of Texas No. 10585500
Telephone Number: 214.659.8600/8729

U.S. Department of Justice

Criminal Division
Office of International Affairs



MEW:DDC:AT:PAD:ag
DOJ Number: 182-19906 (Please use when responding.)

*Washington, D.C. 20530*

July 28, 2004

Davis Jarvis
Assistant United States Attorney
U.S. Attorney's Office
801 Cherry Street, 17th Floor
Ft. Worth, Texas 76102-6897

Re:  <u>Request from Poland for Assistance in the Matter of Marek Pawlowski</u>

Dear Mr. Jarvis:

Enclosed is a request from Poland for assistance pursuant to the Treaty on Mutual Assistance in Criminal Matters.  In accordance with Article 5 of the treaty, your office is hereby designated to render the assistance requested.  As the International and National Security Coordinator for your office, you are charged with the responsibility of ensuring prompt and efficient execution of the request.

The District Prosecutor's Office of Gdansk-Poludnie in Poland is investigating a criminal offense involving misuse of management responsibilities that caused material financial damage to an entity to which the duty was owed.  Mr. Marek Pawlowski, while President of the Polish corporation Gedania, is accused of channeling business contracts to his own company, Eksport 707, to the detriment of Gedania. Gedania is involved in the manufacture of Christmas decorations.

The Polish authorities have requested that we locate and interview representatives from Bombay Company, 550 Bailey Avenue, Fort Worth, Texas 76107-2111.  *Prior to obtaining the testimony of any individual, please advise him or her of the penal responsibility for giving false statements according to Article 233, Paragraph 1, of the Polish Penal Code (which is enclosed in this report).  In addition, please have him or her sign a statement that he or she has been advised of this warning.  After the interview, he or she should read the report and sign it, and all other parties (interviewer and person taking the minutes, etc.) involved in the deposition should also sign the report.*  To assist in your inquiries, a specific list of questions is attached to the request at pages 4 and 5.

Please provide this office with the name, telephone number, and e-mail address of the Assistant United States Attorney to whom the request is assigned.  That Assistant should analyze the request upon receipt and notify this office immediately if the request contains insufficient information to permit execution.  Otherwise, the Assistant should proceed to execute the request at the earliest possible opportunity.  This office will e-mail an outline of the ordinary execution

procedure and appropriate form pleadings to that Assistant upon receipt of that Assistant's e-mail address. Enclosed is a copy of the mutual legal assistance treaty between the United States and Poland.

To the extent that the support of an investigative agency is required, contact the local office of the Federal Bureau of Investigation, which anticipates a request from your office for agent support in executing mutual legal assistance requests (reference FBI Headquarters airtel dated August 10, 1993).

The United States submits a substantial number of requests for assistance to Poland. The continued willingness of the Polish authorities to assist United States prosecutors is preserved by effective and timely execution of Polish requests. Please keep this office apprised of the progress made in executing this request. I will serve as the main point of contact in this office for both your office and Poland. Please contact me at (202) 353-4469 or (202) 514-0041, if you have any questions regarding execution of the request. If necessary, contact Associate Director Debora Caruth at (202) 616-3096.

This office maintains collections of background materials and pleadings relating to many of the unique legal issues that can arise in the course of executing mutual legal assistance requests. When litigation issues arise, please advise us as soon as possible to ensure that our assistance to you is timely and complete, and that the Department takes consistent, well-considered positions in this rapidly developing area of the law.

Both the Office of International Affairs and the law enforcement authorities in Poland appreciate your assistance in this international criminal matter.

Sincerely,

Mary Ellen Warlow
Director

By: Andrea Tisi
Andrea Tisi
Trial Attorney

Enclosure

2

mgr Katarzyna Pawlak
*Sworn Translator of English*
ul. Puławska 54/56 m. 23
02-592 Warsaw
tel./fax (0-22) 646-03-41

# CERTIFIED TRANSLATION
# FROM POLISH



*/The document prepared on the letterhead of the National Prosecutor's Office at the Ministry of Justice of the Republic of Poland, Department of Foreign Legal Relations, tel./fax 48 22 628 1682./* ----------------

Warsaw, 30 March 2004 -------------------------------------

PR III Oz 1068/04/P -------------------------------------

**Department of Justice** -------------------------------

**Office of International Affairs** -------------------------

**1301 New York Avenue, N.W. Suite 900** --------------

**WASHINGTON D.C. 20530** ----------------------------

Pursuant to Article 1 of the Agreement between the Republic of Poland and the United States of America regarding mutual legal assistance in criminal matters, dated 10 July 1996, please find attached a request for legal assistance, issued by the Provincial Prosecutor in Gdańsk on 23 March 2004, ref. no. I Oz 88/04, concerning a case against M. Pawłowski, including a translation thereof into English. I kindly request that you render all possible assistance in this matter. --------

In any further correspondence you quote reference number PR III Oz 1068/04/P. ------------------------------

Yours sincerely, ----------------------------------------

Head of the Department of Foreign Legal Relations ----

Andrzej Kępiński ---------------------------------------

*/Stamp: "Hanka Krukar, Prosecutor at the Appellate Prosecutor's Office in Warsa, elegated to the Ministry of Justice", signature illegible./* --------------------------

*/Round seal with the Polish State Emblem and the inscription: "The Ministry of Justice"./* -----------------

**\*\*\*   \*\*\*   \*\*\***



xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

*I, the undersigned, Katarzyna Pawlak, a Sworn Translator of English, do hereby certify that the attached text is a true and correct translation of the original document submitted to me in Polish.*

*Warsaw, date 8ᵗʰ April 2004*

*Repertory no. 220/04*

*Fee collected: PLN 29.20*

*Katarzyna Pawlak, M.A.*

*Sworn Translator*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

mgr Katarzyna Pawlak
sworn Translator of English
Puławska 54/56 m. 23
02-592 Warsaw
tel./fax (0-22) 646-03-41

## CERTIFIED TRANSLATION
## FROM POLISH

*/The document consists of four pages. In the top-left corner of the first page the following stamp: "Provincial Prosecutor's Office, 36 Wały Jagiellońskie Street, 80-853 Gdańsk"./* -----------------------------------

Gdańsk, 23 March 2004 ------------------------------------

I Oz 88/04 -------------------------------------------------

**Request** -----------------------------------------------------

**for legal assistance in a criminal matter** ---------------

The District Prosecutor's Office of Gdańsk-Południe is supervising proceedings number 1 Ds. 20/04 against Marek Pawłowski suspected of the following: in the period between December 1995 and 15 September 2000, while being the President of the Management Board and Director of the "Gedania" Co-operative in Gdańsk, acting in order to gain financial benefits, he caused financial damage to the Co-operative to a great value. -----------------------------------------------------

The above is classified as a crime under Article 296 paragraphs 2 and 3 of the Penal Code. --------------------

According to the findings of the proceedings, Marek Pawłowski, being the President of the Management Board of the "Gedania" Co-operative, was responsible for conclusion of agreements for sales of goods

manufactured by the Co-operative. The object of the activity of the "Gedania" Co-operative was manufacture of Christmas decorations. ------------------

In October 1996, Marek Pawłowski opened his own company under the name of "Eksport 707", whose business was manufacture of Christmas decorations. Contacting foreign contractors of the Co-operative, as the President of the Management Board of the "Gedania" Co-operative, he implemented some of the orders as the owner of the "Eksport 707" company. In this manner he led to the termination of commercial contracts between the "Gedania" Co-operative and companies who operated in the territory of the United States of America and the Federal Republic of Germany or to a significant decrease in the number of orders placed with the "Gedania" Co-operative by foreign contractors. -----------------------------------------

With a view to the foregoing circumstances, I would like to request that the relevant judicial authorities of the United States of America perform the following activities as part of international legal assistance: -------

cross-examination as witnesses of persons authorized to represent the following companies: -------------------

1. **Always Christmas INC**, with a   seat at **Lake Orion, P.O. Box 67, MI 48361, USA**; ------------------

2. **Kurt Adler**, with a seat at **New York NY 10010, 1170 Brockway, USA**; ------------------------------------

3. **Midwest of Cannon Falls**, with a seat at **MN 55009-0020, 32057 64th Avenue, USA**; -----------------

4. **Prestige Global Corporation**, with a seat at **P.O. Box 459, Great Neck, NY 11022-0459, USA**; ----------

5. **Regalis Import Company Summit**, with a seat at **NY/New Jersey, 7 Brainerd Road, USA**; --------------

6. **The Nature**, with a seat at **KY 41042, 8145 Holton Drive, USA**; --------------------------------------------------

7. **Department 56 One Village**, with a seat at **Place City, West Parkway, Eden Praire, NM 55344, USA**;-------------------------------------------------------

8. **Gumps By Mail**, with a seat at **Hanover, PA 17331-0462, P.O. Box 462, USA**; ------------------------

9. **Deszymer Studio**, with a seat at **Kansas City, 1535 Baltimore Avenue, MO 64108, USA**; -------------------

10. **Bombay Company**, with a seat at **550 Bailey Avenue, Forth Worth, TX 76107-2111, USA**; ---------

11. **Valley View Farms**, with a seat at **Cockeysvill, MD 21030, 11035 York Road, USA**; --------------------

12. **Ornamentally Speaking, Ken and Nancy Murphy**, with a seat at **Loveland, Colorado, USA**; ---

13. **Crate and Barrel**, with a seat at **IL 6006-2393, 725 Landwehr Road, Northbrook, USA**; --------------

14. **A World of Christmas INC**, with a seat at **Austin TX 78765, 5339 North Interstate 35, USA;** ------------

15. **Department Store DIY of Dayton**, with a seat at **Hudson 056, 1000 Nicollel Mall, Mail Station NM 1-09X, P.O. Box 1392, Minneapolis, USA;** --------------

16. **Homestead Gardens**, with a seat at **Central Avenue Ronte 214, Davidsonville, MD 21035, USA;**-

17. **Sak's Fifth Avenue Import**, with a seat at **Services 500, Hickory Drive, Amberdeen, Maryland 21001, USA.** --------------------------------------------------

The activity of cross-examination of a witness should be documented in the form of a report (Article 143 of the Penal Proceedings Code). Prior to the cross-examination, a witness should be advised about the wording of Article 233 of the Penal Code, and the note thereof should be made in the report before the contents of his/her testimony and confirmed by his/her signature. --------------------------------------------------------

The cross-examination of a witness should be aimed at the determination of the following circumstances: ------

1. Did, and if so, when, the company represented by the witness sign co-operation agreements with the "Gedania" Co-operative in Gdańsk? ----------------------

2. What was the scope of concluded agreements? How were such agreements executed? ------------------------

3. Did, and if so, when, the company represented by the witness commence co-operation with the "Export 707" company from Gdańsk? -----------------------------

4. What was the scope of agreements concluded with the "Export 707" company? How were such agreements executed? --------------------------------------

5. Howa was the co-operation between the company represented by the witness and the "Gedania" Co-operative after the conclusion of contracts with the "Export 707" company? ------------------------------------

The performance of the aforementioned activities is necessary for the completion of proceedings no. 1 Ds. 20/04 by the District Prosecutor's Office in Gdańsk-Południe. ---------------------------------------------------

Please find attached an extract from the provisions applicable in the case. ------------------------------------

Yours sincerely, --------------------------------------------

Deputy Provincial Prosecutor -------------------------------

*/signature illegible/* -------------------------------------------

Renata Buczkowska -------------------------------------------

*/Round seal with the Polish State Emblem and the inscription: "Provincial Prosecutor's Office in Gdańsk"./* ---------------------------------------------------

***    ***    ***



xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

*I, the undersigned, Katarzyna Pawlak, a Sworn Translator of English, do hereby certify that the attached text is a true and correct translation of the original document submitted to me in Polish.*

*Warsaw, date ..8ᵗʰ April 2005*

*Repertory no. ....221/05*

*Fee collected: PLN .....156,00...............*

*Katarzyna Pawlak, M.A.*

*Sworn Translator*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

mgr Katarzyna Pawlak
*Sworn Translator of English*
ul. Puławska 54/56 m. 23
02-592 Warsaw
tel./fax (0-22) 646-03-42

## CERTIFIED TRANSLATION

## FROM POLISH

Enclosures: ----------------------------------------------------

1. Extract from the provisions of the Act of 6 June 1997 – the Penal Code (Journal of Laws number 88, item 553); ------------------------------------------------------

2. Extract from the provisions of the Act of 6 June 1997 – the Penal proceedings Code (Journal of Laws number 89, item 555). --------------------------------------

*** -*** - *** –



xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

*I, the undersigned, Katarzyna Pawlak, a Sworn Translator of English, do hereby certify that the attached text is a true and correct translation of the original document submitted to me in Polish.*

*Warsaw, date ....8ʰ April 200⅘*

*Repertory no. ....223/05..*

*Fee collected: PLN ........29.20................*

*Katarzyna Pawlak, M.A.*

*Sworn Translator*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

mgr Katarzyna Pawlak
*Sworn Translator of English*
ul. Puławska 54/56 m. 23
02-592 Warsaw
tel./fax (0-22) 646-03-41

## CERTIFIED TRANSLATION

## FROM POLISH

### Extract from the Penal Code - the Act of 6 June 1997 (Journal of Laws number 88, item 553) ---------

### Article 101 -------------------------------------------------

### paragraph 1 ----------------------------------------------

Punishability for a crime ceases to exist if the following number of years lapses from the time of commitment of such crime: -----------------------

1.  30 – if the act is the crime of murder; -----------------

2.  20 – if the act is another crime; -----------------------

3.  10 – if the act is an offence the penalty for which is imprisonment for more than 3 years; ------------------

4.  5 – if the act is an offence the penalty for which is imprisonment for not more than 3 years; -------------

5.  3 – if the act is an offence the penalty for which is the restriction of personal freedom or a fine. --------

### Article 102 ------------------------------------------------

If during the periods provided for in Article 101, proceedings are instituted against a person, punishability for the crime such person committed shall cease after the lapse of 5 years from the end of the said period. ----------------------------------------------------

**Article 233** -------------------------------------------------

<u>paragraph 1</u> ---------------------------------------------

Any person who, in submitting a statement which is to serve as evidence in a court proceedings or in any other proceedings conducted under this Act, does not tell the truth or conceals the truth, shall be liable to a penalty of imprisonment of up to 3 years. --------------------------

<u>paragraph 2</u> ---------------------------------------------

The condition for the foregoing liability to occur shall be the obligation of the person accepting the statement, acting within the scope of such person's authority, to notify the party submitting the statement of the liability for perjury, or his/her obligation to receive such statement under oath.------------------------------------------

<u>paragraph 3</u> ---------------------------------------------

The penalty shall not apply to a person who, not being aware of his/her right to refuse to testify or answer questions, testifies untruth due to the fact that s/he is afraid of the penal liability s/he or a person closest to him/her may face. --------------------------------------------

**Article 296** -------------------------------------------------

<u>paragraph 1</u> ---------------------------------------------

Any person who, by operation of the provisions of a legal act, decision issued by a competent authority or agreement, is obliged to manage the financial affairs or the economic activity of an individual, a corporation or

an organizational entity without a corporate personality, and who, by abuse of the rights vested in him/her or by failure to fulfil his/her obligation, causes material financial damage to such entity, shall be liable to a penalty of imprisonment from 3 months to 5 years.--------------------------------------------------------

paragraph 2 ------------------------------------------------

If the perpetrator of the offence specified in § 1 acts in order to obtain financial benefits, s/he shall be liable to a penalty of imprisonment of 6 months to 8 years. ------

paragraph 3 ------------------------------------------------

If the perpetrator of the offence specified in § 1 or 2 causes financial damage of great value, s/he shall be liable to a penalty of imprisonment of 1 year to 10 years. --------------------------------------------------------

*/Stamp: "Photocopy certified to be a true and correct copy of the original. Gdańsk, 25 March 2004"./ --------*

*/Stamp: "Trainee Assistant Judge, Maria Matchuk", signature illegible./ ---------------------------------------*

*/Round seal with the Polish State Emblem and the inscription: "Provincial Prosecutor's Office in Gdańsk"./ ---------------------------------------------------*

\*\*\*   \*\*\*   \*\*\*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

*I, the undersigned, Katarzyna Pawlak, a Sworn Translator of English, do hereby certify that the attached text is a true and correct translation of the original document submitted to me in Polish.*

*Warsaw, date ....8ᵗʰ April 2004*

*Repertory no. ....222/04.*

*Fee collected: PLN ........87,62...............*

..........................................

*Katarzyna Pawlak, M.A.*

*Sworn Translator*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

mgr Katarzyna Pawlak
*Sworn Translator of English*
ul. Puławska 54/56 m. 23
02-592 Warsaw
tel./fax (0-22) 646-03-41

## CERTIFIED TRANSLATION

## FROM POLISH

### Extract from the Penal Proceedings Code - the Act of 6 June 1997 (Journal of Laws number 89, item 555) -------------------------------------------------------

*Article 143* -------------------------------------------------------

paragraph 1 -------------------------------------------------------

The drawing-up of a report shall be required in the case of: -------------------------------------------------------

1) acceptance of verbal notification of a crime, request for prosecution and withdrawal of the same; ---------

2) cross-examination of the accused, witness, expert and probation officer; -----------------------------------

3) performance of an inspection; --------------------------

4) conduct of a post-mortem and exhumation; ----------

5) conduct of an experiment, identity parade and presentation of evidence; -------------------------------

6) search of a person, premises and objects, as well as detention of objects; -------------------------------------

7) opening of correspondence and of parcels, as well as reconstruction of recorded written material; ------

8) making a suspect acquainted with the materials gathered in preparatory proceedings; ------------------

9) acceptance of a warranty; -----------------------------

10)   a session of the Court held pursuant to Article

339; --------------------------------------------------------

11)   a hearing. ----------------------------------------------

/Stamp: *"Photocopy certified to be a true and correct*

*copy of the original. Gdańsk, 25 March 2004"./* --------

/Stamp: *"Trainee Assistant Judge, Maria Matchuk"*,

*signature illegible./* -----------------------------------------

/Round seal with the Polish State Emblem and the

inscription: *"Provincial Prosecutor's Office in*

*Gdańsk"./* ----------------------------------------------------

\*\*\*   \*\*\*   \*\*\*



xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

*I, the undersigned, Katarzyna Pawlak, a Sworn Translator of English, do hereby certify that the attached text is a true and correct translation of the original document submitted to me in Polish.*

*Warsaw, date* 8ᵗʰ April 2004

*Repertory no.* 224/04

*Fee collected: PLN* 58.40

...............................

**Katarzyna Pawlak, M.A.**

*Sworn Translator*

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

1



| 105TH CONGRESS<br>*1st Session* | SENATE | TREATY DOC.<br>105–12 |
|---|---|---|

## MUTUAL LEGAL ASSISTANCE TREATY WITH POLAND

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF POLAND ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, SIGNED AT WASHINGTON ON JULY 10, 1996



JULY 8, 1997.—Treaty was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

39–118                    WASHINGTON : 1997

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 8, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty Between the United States of America and the Republic of Poland on Mutual Legal Assistance in Criminal Matters, signed at Washington on July 10, 1996. I transmit also, for the information of the Senate, the report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties being negotiated by the United States in order to counter criminal activity more effectively. The Treaty should be an effective tool to assist in the prosecution of a wide variety of crimes, including "white-collar" crime and drug trafficking offenses. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: taking of testimony or statements of persons; providing documents, records, and articles of evidence; serving documents; locating or identifying persons or items; transferring persons in custody for testimony or other purposes; executing requests for searches and seizures; assisting in proceedings related to immobilization and forfeiture of assets, restitution to the victims of crime, and collection of fines; and any other form of assistance not prohibited by the laws of the Requested State.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, June 18, 1997.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty Between the United States of America and the Republic of Poland on Mutual Legal Assistance in Criminal Matters ("the Treaty"), signed at Washington on July 10, 1996. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification.

The Treaty covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force with a number of other countries.

The Treaty with Poland contains all essential provisions sought by the United States and, indeed, follows closely the form and content of mutual legal assistance treaties recently concluded by the United States. It will enhance our ability to investigate and prosecute a variety of offenses, including white collar crime and drug trafficking offenses of particular interest to the U.S. law enforcement community with respect to Poland. The Treaty is designed to be self-executing and will not require implementing legislation.

Article 1 sets forth a non-exclusive list of the major types of assistance to be provided under the Treaty, including taking the testimony or statements of persons; providing documents, records and articles of evidence; serving documents; locating or identifying persons or items; transferring persons in custody for testimony or other purposes; executing requests for searches and seizures; assisting in proceedings related to immobilization and forfeiture of assets, restitution to the victims of crime and collection of fines; and rendering any other form of assistance not prohibited by the laws of the Requested State. The scope of the Treaty includes not only criminal offenses, but also proceedings directly related to criminal matters, which may be civil or administrative in nature.

Article 1 states that assistance shall be provided without regard to whether the conduct involved would constitute an offense under the laws of the Requested State.

Article 1(4) states explicitly that the Treaty is not intended to create rights in private parties to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

Article 2 provides for the establishment of Central Authorities and defines Central Authorities for purposes of the Treaty. For the United States, the Central Authority is the Attorney General or a person designated by the Attorney General. For Poland, the Central Authority is the Minister of Justice—Attorney General or

VI

a person designated by the Minister of Justice—Attorney General. The article provides that the Central Authorities shall communicate directly with one another for the purposes of the Treaty.

Article 3(1) sets forth the limited circumstances under which a Requested State's Central Authority may deny assistance under the Treaty. A request may be denied if it relates to a military offense that would not be a crime under ordinary criminal law, or if the request relates to a political offense. In addition, a request may be denied if its execution would prejudice the security or similar essential interests of the Requested State, or if it is not made in conformity with the Treaty.

Before denying assistance, the Central Authority of the Requested State is required under Article 3(2) to consult with its counterpart in the Requesting State to consider whether assistance can be given subject to such conditions as the Central Authority of the Requested State deems necessary. If the Requesting State accepts assistance subject to these conditions, it is required to comply with the conditions. If the Central Authority of the Requested State denies assistance, it is required under Article 3(3) to inform the Central Authority of the Requesting State of the reasons for the denial.

Article 4 prescribes the form and content of written requests under the Treaty, specifying in detail the information required in each request. The article permits other forms of request in emergency situations but requires written confirmation within ten days thereafter unless the Central Authority of the Requested State agrees otherwise. Unless otherwise agreed, the request shall be in the language of the Requested State.

Article 5 requires the Central Authority of the Requested State to execute the request promptly or to transmit it to the authority having jurisdiction to do so. It provides that the competent authorities of the Requested State shall do everything in their power to execute a request, and that the judicial or other competent authorities of the Requested State shall have authority to issue subpoenas or other orders necessary to execute the request. The Central Authority of the Requested State must make all arrangements for and meet the costs of representation of the Requesting State in any proceedings arising out of an assistance request.

Under Article 5(3), requests are to be executed in accordance with the laws of the Requested State except to the extent that the Treaty provides otherwise. However, the method of execution specified in the request is to be followed except insofar as it is prohibited by the laws of the Requested State. If the Central Authority of the Requested State determines that execution of the request would interfere with an ongoing investigation, prosecution, or proceeding, it may postpone execution or, after consulting with the Central Authority of the Requesting State, impose conditions on execution. If the Requesting State accepts assistance subject to conditions, it shall comply with them.

Article 5(5) further requires the Requested State, if so requested, to use its best efforts to keep confidential a request and its contents, and to inform the Requesting State's Central Authority if the request cannot be executed without breaching confidentiality. This provides the Requesting State an opportunity to decide whether to

VII

pursue the request or to withdraw it in order to maintain confidentiality.

Article 5 additionally requires the Requested State's Central Authority to respond to reasonable inquiries by the Requesting State's Central Authority regarding the status of the execution of a particular request; to report promptly to the Requesting State's Central Authority the outcome of its execution; and, if the request is delayed or postponed, to inform the Requesting State's Central Authority of the reasons for the delay or postponement.

Article 6 apportions between the two States the costs incurred in executing a request. It provides that the Requested State shall pay all costs, except for the following items to be paid by the Requesting State: fees of expert witnesses, costs of translation and interpretation, the costs of recording by private parties of testimony or statements (or the costs of preparation by private parties of written records or videotapes of testimony or statements), and allowances and expenses related to travel of persons pursuant to Articles 10 and 11.

Article 7 requires the Requesting State to comply with any request by the Central Authority of the Requested State that information or evidence obtained under the Treaty not be used for proceedings other than those described in the request without its prior consent. Further, if the Requested State's Central Authority asks that information or evidence furnished be kept confidential or be used in accordance with specified conditions, the Requesting State must use its best efforts to comply with the conditions. Once information is made public in the Requesting State in accordance with either of these provisions, no further limitations on use apply. Nothing in the article prevents the use or disclosure of information to the extent that such information is exculpatory to a defendant in a criminal prosecution. The Requesting State is obliged to notify the Requested State in advance of any such proposed disclosure.

Article 8 provides that a person in the Requested State from whom testimony or evidence is requested pursuant to the Treaty shall be compelled, if necessary, to appear and testify or produce items and articles of evidence. The article requires the Central Authority of the Requested State, upon request, to furnish information in advance about the date and place of the taking of testimony or evidence.

Article 8(3) further requires the Requested State to permit the presence of persons specified in the request (such as the accused, counsel for the accused, or other interested persons) and to permit them to question the person giving the testimony or evidence. In the event that a person whose testimony or evidence is being taken asserts a right to decline to provide testimony or evidence under the laws of the Requesting State, Article 8(4) provides that the testimony or evidence shall be taken and the claim made known to the Central Authority of the Requesting State for resolution by its authorities.

Finally, in order to ensure admissibility in evidence in the Requesting State, Article 8(5) provides, through the use of Forms A and B appended to the Treaty, a mechanism for authenticating evidence that is produced pursuant to or that is the subject of testi-

VIII

mony taken in the Requested State (or certifying its absence or nonexistence).

Article 9 requires that the Requested State provide the Requesting State with copies of publicly available records in the possession of an executive, legislative or judicial authority in the Requested State. The Requested State may further provide copies of records or information that are in the possession of an executive, legislative or judicial authority in that State, but not publicly available, to the extent and under the same conditions as it would provide them to its own law enforcement or judicial authorities. The Requested State has the discretion to deny such requests pursuant to this paragraph entirely or in part. Article 9 also provides that no further authentication shall be necessary for admissibility into evidence in the Requesting State of official records where the official in charge of maintaining them authenticates the records through the use of Form C appended to the Treaty. In like manner, the absence or nonexistence of such records is, upon request, to be certified by the use of Form D, which shall be admissible in evidence in the Requesting State.

Article 10(1) provides a mechanism for the Requesting State to invite the voluntary appearance in its territory of a person located in the Requesting State. The Requested State shall indicate the extent to which the expenses will be paid. Article 10(2) states that a person appearing in the Requesting State shall not be prosecuted, detained or subjected to any restriction of personal liberty by reason of any acts or convictions that preceded that person's departure from the Requested State. Under Article 10(3), any safe conduct provided for by this article ceases fifteen days from the date when the person's presence is no longer required, and that person, having had an opportunity to leave, has remained in the Requesting State or, if the person has left the Requesting State and voluntarily returns to it.

Article 11 provides for temporary transfer of a person in custody in the Requested State to the Requesting State for purposes of assistance under the Treaty (for example, a witness incarcerated in the Requested State may be transferred to the Requesting State to have his deposition taken in the presence of the defendant), provided that the person in question and the Central Authorities of both States agree. The article also provides for voluntary transfer of a person in the custody of the Requesting State to the Requested State for purposes of assistance under the Treaty (for example, a defendant in the Requesting State may be transferred for purposes of attending a witness deposition in the Requested State), if the person consents and if the Central Authorities of both States agree.

Article 11(3) further establishes both the express authority and the obligation of the receiving State to maintain the person transferred in custody unless otherwise authorized by the sending State. The return of the person transferred is subject to terms and conditions agreed to by the Central Authorities, and the sending State is not required to initiate extradition proceedings for return of the person transferred. The person transferred receives credit for time served in the custody of the receiving State.

IX

Article 12 requires the Requested State to use its best efforts to ascertain the location or identity of persons or items specified in a request.

Article 13 obligates the Requested State to use its best efforts to effect service of any document relating, in whole or in part, to a request under the Treaty. A request for the service of a document requiring a person to appear in the Requesting State must be transmitted a reasonable time before the scheduled appearance. Proof of service is to be provided in the manner specified in the request.

Article 14 obligates the Requested State to execute requests for search, seizure and delivery of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State. It provides that, upon request by the Central Authority of the Requesting State, every official who has custody of a seized item is required to certify, through the use of Form E appended to the Treaty, the continuity of custody, the identity of the item and the integrity of its condition. No further certification is required. The certificate is admissible in evidence in the Requesting State. Article 14(3) further provides that the Central Authority of the Requested State may impose terms and conditions deemed necessary to protect third party interests in items to be transferred.

Article 15 requires the Requesting State's Central Authority, upon request of its counterpart in the Requested State, to return documents, records or articles of evidence obtained in the execution of a request as soon as possible.

Article 16(1) provides that, if the Central Authority of one Contracting Party becomes aware of proceeds or instrumentalities of offenses that are located in the other Contracting Party and may be forfeitable or at least subject to immobilization under the laws of the other Party, it may so inform the Central Authority of that other Party. If the Party receiving such information has jurisdiction, it may present this information to its authorities for a determination whether any action is appropriate. The Central Authority of the Party receiving such information is required to inform the Central Authority that provided the information of the action taken.

Article 16(2) also obligates the Contracting Parties to assist each other to the extent permitted by their respective laws in proceedings relating to forfeiture of proceeds and instrumentalities of offenses, restitution to victims of crime and collection of fines imposed as sentences in criminal prosecutions. Under Article 16(3), the Party having custody over proceeds or instrumentalities of offenses is required to dispose of them in accordance with its laws. Either party may share with the other party forfeited assets, or the proceeds of their sale, to the extent not prohibited by the transferring party's laws and upon such terms as it deems appropriate.

Article 17 states that assistance and procedures provided in the Treaty shall not prevent either Contracting Party from granting assistance through the provisions of other applicable international agreements or pursuant to established practices consistent with their laws.

X

Article 18 provides that the Central Authorities shall consult, at times mutually agreed to promote the most effective use of the Treaty, and may agree upon such practical measures as may be necessary to facilitate the Treaty's implementation.

Article 19 provides that the Contracting Parties shall exchange instruments of ratification at Warsaw, and the Treaty shall enter into force 30 days after the exchange of instruments of ratification. Article 19 further provides that either party may terminate the Treaty by written notice of the other party, with termination to become effective six months after the date of receipt of such notice.

A Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegations consisting of representatives from the Department of Justice and State, and will be transmitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate as soon as possible.

Respectfully submitted,

MADELEINE ALBRIGHT.

TREATY BETWEEN
THE UNITED STATES OF AMERICA
AND
THE REPUBLIC OF POLAND
ON
MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

(1)

2

The United States of America and the Republic of Poland;

Desiring to improve the effectiveness of the law enforcement authorities of both countries in the investigation, prosecution, and prevention of crime through cooperation and mutual legal assistance in criminal matters,

Have agreed as follows:

3

- 2 -

Article 1

Scope of Assistance

1. The Contracting Parties shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the investigation, prosecution, and prevention of offenses. The Contracting Parties shall also provide such assistance for forfeiture and other proceedings directly related to criminal offenses, where such assistance is not prohibited by the laws of the Requested State.

2. Assistance shall include:

a)   taking the testimony or statements of persons;

b)   providing documents, records, and articles of evidence;

c)   locating or identifying persons or items;

d)   serving documents;

e)   transferring persons in custody for testimony or other purposes;

f)   executing requests for searches and seizures;

g)   assisting in proceedings related to immobilization and forfeiture of assets, restitution to the victims of crime, collection of fines; and

h)   any other form of assistance not prohibited by the laws of the Requested State.

3. Assistance shall be provided without regard to whether the conduct that is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute an offense under the laws of the Requested State.

4.   This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

4

- 3 -

Article 2

Central Authorities

1. Each Contracting Party shall have a Central Authority to make and receive requests pursuant to this Treaty.

2. For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General. For the Republic of Poland, the Central Authority shall be the Minister of Justice - Attorney General or a person designated by the Minister of Justice - Attorney General.

3. The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

Article 3

Limitations on Assistance

1. The Central Authority of the Requested State may deny assistance if:

    a)   the request relates to an offense under military law that would not be an offense under ordinary criminal law;

    b)   the request relates to a political offense;

    c)   the execution of the request would prejudice the security or similar essential interests of the Requested State; or

    d)   the request is not made in conformity with the Treaty.

2. Before denying assistance pursuant to this Article, the Central Authorities shall consult to consider whether assistance can be given subject to such conditions as the Central Authority of the Requested State deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

3. If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

5

- 4 -

### Article 4

### Form and Contents of Requests

1. A request for assistance shall be in writing except that the Central Authority of the Requested State may accept a request in another form in emergency situations. In any such case, the request shall be confirmed in writing within ten days thereafter unless the Central Authority of the Requested State agrees otherwise. The request shall be in the language of the Requested State unless otherwise agreed.

2. The request shall include the following:

    a) the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

    b) information describing the facts of the offenses and the procedural history of the case;

    c) the text of the laws describing the offenses for which assistance is requested;

    d) a description of the evidence, information, or other assistance sought; and

    e) a statement of the purpose for which the evidence, information, or other assistance is sought.

3. To the extent necessary and possible, a request shall also include:

    a) information on the identity and location of any person who is to provide testimony or evidence;

    b) information on the identity and location of a person to be served, that person's status in the case, and the manner in which service is to be made;

    c) information on the identity and whereabouts of persons or items to be located;

    d) a precise description of the place or person to be searched and of the items to be seized;

6

- 5 -

e)  a description of the manner in which any testimony or
statement is to be taken and recorded;

f)  a list of questions to be asked of a person from whom
testimony or a statement is sought;

g)  a description of any particular procedure to be followed
in executing the request;

h)  information as to the allowances and expenses to which a
person asked to appear in the Requesting State will be
entitled; and

i)  any other information that may assist the Requested
State in executing the request.

Article 5

Execution of Requests

1.  The Central Authority of the Requested State shall promptly execute the request
or, when appropriate, shall transmit it to the authority having jurisdiction to do so.  The
competent authorities of the Requested State shall do everything in their power to execute
the request.  The judicial or other competent authorities of the Requested State shall
issue subpoenas, search warrants, or other orders necessary to execute the request.

2.  The Central Authority of the Requested State shall make all necessary
arrangements for the representation in the Requested State of the Requesting State in any
proceedings arising out of a request for assistance.

3.  Requests shall be executed in accordance with the laws of the Requested State
except to the extent that this Treaty provides otherwise.  However, the method of
execution specified in the request shall be followed except insofar as it is prohibited by the
laws of the Requested State.

4.  If the Central Authority of the Requested State determines that execution of a
request would interfere with an ongoing criminal investigation, prosecution, or

7

- 6 -

proceeding in that State, it may postpone execution, or make execution subject to conditions determined necessary after consultations with the Central Authority of the Requesting State.  If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

   5.  The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State.  If the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

   6.  The Central Authority of the Requested State shall respond to reasonable inquiries by the Central Authority of the Requesting State on progress toward execution of the request.

   7.  The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request.  If the request is delayed or postponed, the Central Authority of the Requested State shall inform the Central Authority of the Requesting State of the reasons for the delay or postponement.

Article 6

Costs

   The Requested State shall pay all costs relating to the execution of a request, except for the following:

   a)    the fees of experts;

   b)    the costs of interpretation and translation;

   c)    the costs of recording by private parties of testimony or statements, or the costs of preparation by private parties of written records or videotapes of testimony or statements; and

8

- 7 -

d)   the allowances and expenses related to travel of persons travelling to a place in the Requested State as requested by the Requesting State, or pursuant to Article 10 or Article 11.

### Article 7
### Limitations on Use

1. The Central Authority of the Requested State may request that the Requesting State not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Central Authority of the Requested State. In such cases, the Requesting State shall comply with this condition.

2. The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential or be used only subject to terms and conditions it may specify. If the Requesting State accepts the information or evidence subject to such conditions, the Requesting State shall use its best efforts to comply with the conditions.

3. Nothing in this Article shall preclude the use or disclosure of information to the extent that such information is exculpatory to a defendant in a criminal prosecution. The Requesting State shall notify the Requested State in advance of any such proposed disclosure.

4. Information or evidence which has been made public in the Requesting State in a manner consistent with paragraph 1 or 2 may thereafter be used for any purpose.

9

- 8 -

### Article 8

### Testimony or Evidence in the Requested State

1. A person in the Requested State from whom testimony or evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and testify or produce items, including documents, records, and articles of evidence. A person who gives false testimony, either orally or in writing, in execution of a request, shall be subject to prosecution and punishment in the Requested State in accordance with the criminal laws of that State, regardless of whether the person would also be subject to prosecution and punishment in the Requesting State.

2. Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article.

3. The Requested State shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to question the person giving the testimony or evidence.

4. If the person referred to in paragraph 1 invokes a right to decline to provide testimony or evidence under the laws of the Requesting State, the testimony or evidence shall nonetheless be taken as requested. Thereafter the Central Authority of the Requested State shall transmit the testimony or evidence, together with the asserted claim, for resolution by the competent authorities of the Requesting State.

5. Evidence produced in the Requested State pursuant to this Article or that is the subject of testimony taken under this Article shall, upon request, be authenticated by an attestation, including, in the case of business records, authentication in the manner indicated in Form A appended to this Treaty. The absence or nonexistence of such records shall, upon request, be certified through the use of Form B appended to this Treaty. Records authenticated by Form A, or Form B certifying the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

10

- 9 -

### Article 9

### Official Documents and Records of Government Agencies

1. The Requested State shall provide the Requesting State with copies of documents, records, or information in any form that are available to members of the public of the Requested State generally or upon compliance with a legal requirement and are in the possession of an executive, legislative, or judicial authority in the Requested State.

2. The Requested State may provide copies of any documents, records, or information in any form that are in the possession of an executive, legislative, or judicial authority in that State, but that are not publicly available, to the same extent and under the same conditions as such copies would be available to its own law enforcement or judicial authorities. The Requested State may in its discretion deny a request pursuant to this paragraph entirely or in part.

3. Records of an executive, legislative, or judicial authority produced pursuant to this Article shall, upon request, be authenticated by an official responsible for maintaining them through the use of Form C appended to this Treaty. The absence or nonexistence of such records shall, upon request, be certified through the use of Form D appended to this Treaty. Records authenticated by Form C, or Form D certifying the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

### Article 10

### Appearance in the Requesting State

1. When the Requesting State requests the appearance of a person in that State, the Requested State shall invite the person to appear before the appropriate authority in the Requesting State. The Requesting State shall indicate the extent to which the person's

11

- 10 -

expenses will be paid. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the person's response.

2. A person appearing in the Requesting State shall not be prosecuted, detained, or subjected to any restriction of personal liberty in the Requesting State by reason of acts or convictions that preceded that person's departure from the Requested State.

3. The safe conduct provided for by this Article shall cease fifteen consecutive days from the date when the person's presence is no longer required, and that person, having had an opportunity to leave, has nevertheless remained in the Requesting State, or, having left, has returned.

### Article 11
### Temporary Transfer of Persons in Custody

1. A person in the custody of the Requested State whose presence in the Requesting State is sought for purposes of assistance under this Treaty shall be transferred temporarily from the Requested State to the Requesting State for that purpose if the person consents and if the Central Authorities of both States agree.

2. A person in the custody of the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty shall be transferred temporarily from the Requesting State to the Requested State if the person consents and if the Central Authorities of both States agree.

3. For purposes of this Article:

a)   the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

b)   the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

12

- 11 -

c)   the receiving State shall not require the sending State to initiate
extradition or any other proceedings for the return of the person
transferred; and

d)   the person transferred shall receive credit for service of the sentence
imposed in the sending State for time served in the custody of the
receiving State.

### Article 12
### Location or Identification of Persons or Items

If the Requesting State seeks the location or identity of persons or items in the
Requested State, the Requested State shall use its best efforts to ascertain the location or
identity.

### Article 13
### Service of Documents

1. The Requested State shall use its best efforts to effect service of any document
relating to any request for assistance made by the Requesting State under the provisions
of this Treaty.

2. The Requesting State shall transmit any request for the service of a document
requiring the appearance of a person before an authority in the Requesting State a
reasonable time before the scheduled appearance.

3. The Requested State shall return a proof of service to the Requesting State in the
manner specified in the Request.

13

- 12 -

### Article 14
#### Search and Seizure

1. The Requested State shall execute a request for the search, seizure, and delivery of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.

2. Upon request by the Central Authority of the Requesting State, every official in the Requested State who has had custody of a seized item shall certify, through the use of Form E appended to this Treaty, the identity of the item, the continuity of its custody, and any changes in its condition. No further certification shall be required. The certificates shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

3. The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary by the Central Authority of the Requested State to protect third party interests in the item to be transferred.

### Article 15
#### Return of Items

The Central Authority of the Requested State may require that the Central Authority of the Requesting State return as soon as possible any items, including documents, records, or articles of evidence furnished to it in execution of a request under this Treaty.

### Article 16
#### Assistance in Forfeiture Proceedings

1. If the Central Authority of one Contracting Party becomes aware of proceeds or instrumentalities of offenses that are located in the other Party and may be forfeitable or

14

- 13 -

at least subject to immobilization under the laws of the other Party, it may so inform the Central Authority of the other Party. If the other Party has jurisdiction in this regard, it may present this information to its authorities for a determination whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report on the action taken to the other Party that provided the initial information.

2. The Contracting Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses, as well as in proceedings relating to restitution to the victims of crime and the collection of fines imposed as sentences in criminal prosecutions. This may include action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

3. The Party that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws. Either Party may transfer all or part of such assets, or the proceeds of their sale, to the other Party, to the extent permitted by the transferring Party's laws and upon such terms as it deems appropriate.

Article 17

Compatibility with Other Treaties

Assistance and procedures set forth in this Treaty shall not prevent either of the Contracting Parties from granting assistance to the other Party through the provisions of other applicable international agreements. The Parties may also provide assistance pursuant to established practices in a manner consistent with their laws.

# COMMISSIONER'S SUBPOENA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TO:    Custodian of Records
        BOMBAY COMPANY.
        550 Bailey Avenue
        Fort Worth, TX  76107-2111


        I, Commissioner David L.  Jarvis, an Assistant United States Attorney for the Northern District of Texas, acting pursuant to an Order of the District Court and under the authority of Title 28, United States Code, Section 1782, for the purpose of rendering assistance to Poland, command that you appear before me in Suite 1700, in the building located at 801 Cherry Street, in the city of Fort Worth, in the state of Texas, at ___a.m., on _____, 2005,  to provide testimony regarding an alleged violation of:

> the laws of Poland, namely, misuse of management responsibilities that caused material financial damage to an entity to which the duty was owed, among other alleged violation,

and that at the time and place aforesaid you provide testimony.

        For failure to attend and provide testimony, you will be deemed guilty of contempt and liable to penalties under the law.


Dated: _____



_____
COMMISSIONER DAVID L.  JARVIS
Assistant United States Attorney for the
Northern District of Texas
Telephone 214.659.8600/5278